Cheshire
No. 7304

ELEANOR C. NICKAS

v.

PAUL ANTON NICKAS

August 31, 1976

*Stanley, Tardiff & Shapiro (Mr. R. Peter Shapiro* orally) for the plaintiff.

*Upton, Sanders & Smith (Mr. J. Gilbert Upton* orally) for the defendant.

LAMPRON, J.   Petition by plaintiff to enforce an Illinois divorce decree entered May 14, 1970, containing an order for money judgments in the amount of $3,175 ($2,250 for past-due support and $925 in payment of a loan) and in the amount of $2,500 for counsel fees. The court also ordered that the defendant pay the plaintiff $250 per month alimony until further order of the court or the remarriage of the plaintiff, which did occur on November 15, 1972. On a prior transfer to this court, we held that the Illinois court had in personam jurisdiction over the defendant and that the Illinois decree of divorce, the award of alimony, and the money judgments were entitled to full faith and credit. *Nickas v. Nickas,* 113 N.H. 261, 306 A.2d 51 (1973).

The above opinion also adverted to a plea in recoupment filed by the defendant seeking damages from the plaintiff for fraud in obtaining the Illinois decree. We held that "[t]his is a separate cause of action from the Illinois proceeding and raises issues not litigated or in issue there. The defendant's plea is permitted under our practice." *Id.* at 266, 306 A.2d at 54. A hearing on defendant's plea of recoupment was held before a Master (*Frank B. Clancy,* Esq.) who made findings of fact and rulings of law, and recommended that a judgment be entered for the plaintiff on her petition to enforce her Illinois decree in the sum of $13,175 ($2,250 for past-due support, $925 loan, $2,500 counsel fees, $7,500 alimony from date of decree to the date of plaintiff's remarriage.) The master also recommended that a judgment be entered for the defendant on his plea in recoupment in the sum of $6,125 which is 50 percent of the above items except the loan of $925. On October 21, 1974, the master's report was approved by the Trial Court (*Loughlin,* J.) and a decree entered in accordance therewith. The exceptions of both parties thereto were reserved and transferred.

The following facts are agreed on by the parties. Plaintiff had been domiciled in Illinois for six years when she married the defendant there on January 13, 1969. He had been domiciled in New Hampshire for about ten years at that time. The parties lived together in Illinois until February 4, 1969, when defendant returned to New Hampshire. Plaintiff visited the defendant here from April 15 to April 20, 1969. She returned to Illinois and filed

a petition for separate maintenance and obtained personal service on the defendant in Massachusetts. He appeared specially by counsel to contest jurisdiction but the Illinois court, after a hearing, held it had personal jurisdiction over him, and granted the petition. On April 22, 1970, the separate maintenance action was amended to one in divorce with service on defendant in Massachusetts by certified mail. A divorce was decreed to plaintiff on the ground of desertion and the money judgments previously mentioned were ordered as well as alimony in the amount of $250 per month. Meanwhile the defendant had obtained a divorce in this State which we held in the previous transfer did not affect the validity of the Illinois decree and judgments. *Nickas v. Nickas,* 113 N.H. 261, 266, 306 A.2d 51, 54 (1973).

Defendant's plea in recoupment alleges that plaintiff obtained her Illinois default judgment (1) by falsely and fraudulently representing to the court defendant's earnings, earning capacity and assets; (2) by falsely and fraudulently testifying that she was abandoned by the defendant; and (3) by falsely and fraudulently inducing the defendant to marry her for the purpose of securing alimony for herself.

The master denied requests by the defendant for findings that he did not voluntarily enter into his marriage with the plaintiff and that he was induced to marry her by her fraudulent representations that she loved him when in fact she married him for ulterior and unworthy purposes. We hold that these denials were warranted by the evidence and dispose of ground No. 3 of defendant's plea.

The master found that the testimony of both parties leads to the conclusion that the defendant did not wish to resume the marital relationship after he left his wife in Chicago in February 1969. The master further found that the plaintiff did not falsely and fraudulently represent to the Illinois court that the defendant abandoned her in that State. We hold that this finding and ruling were in accord with the evidence and the law. Thus ground No. 2 of the plea in recoupment is also disposed of.

We therefore turn to ground No. 1 of defendant's plea, that is, that the plaintiff obtained the order for alimony and the money judgments pertaining thereto, as well as the counsel fees awarded, by false and fraudulent representations of the defendant's earnings, earning capacity and assets. The essence of the master's findings and rulings on this issue are contained in the following requests of the defendant which were granted. "28. In her tes-

timony before [the Illinois court] . . . [plaintiff] falsely and fraudulently represented that Paul Nickas was a professor at the University of New Hampshire [at] a salary of $15,000 per year . . . . Paul Nickas' actual salary as an associate professor at Keene State College was $8,978 at this time. Since [he] was a State employee his salary was a matter of public record and this information could have been obtained by [plaintiff] or her attorney by simple inquiry either to the State of New Hampshire or to Keene State College.

"29 . . . . [plaintiff] also falsely and fraudulently represented to the [court] that Paul Nickas owned stocks and bonds and a grocery store when in fact he owned neither and she had no reasonable basis for believing he did." "30. In said hearing [plaintiff] also falsely and fraudulently represented to the [court] that she derived a small income from social security and Veterans benefits when in fact a substantial portion of her income was derived from ownership of stocks and bonds, and earnings as a secretary. She also falsely and fraudulently represented to the Court that she was not able to work because she had two small children, one six and one seven, when she was already working at least parttime at the time of the decree and in the fall of 1970 resumed working full time."

In support of the above findings and rulings regarding plaintiff's representations as to defendant's earnings, earning capacity, and assets, the master's report reads as follows: "The law in New Hampshire regarding false representations is clearly stated in *Graham v. Weber,* 79 N.H. 393 [395, 109 A. 717, 718 (1920)] as follows: ' . . . his statement to the plaintiff was made recklessly with conscious indifference as to its truth, and without caring whether it was true or false. This would establish the fraudulent character of the act'.

"Here, plaintiff and her Illinois counsel depended entirely upon defendant's alleged statements made, rather than any independant investigation, as to earnings, earning capacity, and assets. This conduct is easily to be characterized as 'reckless' and 'with conscious indifference as to its truth', especially when proof is readily obtainable and no effort was made by either plaintiff or her counsel to verify these alleged statements. It seems almost incredible that a case would be presented to a court, albeit 'uncontested', in which a litigant had no corroborative evidence to substantiate her allegations regarding defendant's income and assets."

The master also granted defendant's request which read in part as follows: "Since Paul Nickas was a State employee his salary was a matter of public record and this information could have been obtained by Eleanor . . . or her attorney by simple inquiry directed either to the State of New Hampshire or to Keene State College." *See* Laws 1967, 251:1, now RSA 91-A:4 (Supp. 1975); *Mans v. Lebanon School Bd.,* 112 N.H. 160, 290 A.2d 866 (1972). There was also evidence in the record to support the master's grant of a request of the defendant that plaintiff fraudulently represented the amount of her income and the nature of its sources as well as her ability to work. We hold that the evidence as a whole warranted the findings and ruling of the master that the plaintiff made false representations recklessly which caused the Illinois court to order alimony in an amount larger than if the true facts had been presented to it. *See Hall v. Insurance Co.,* 91 N.H. 6, 13 A.2d 157 (1940); *Saidel v. Society,* 84 N.H. 232, 149 A. 78 (1930).

The master properly measured the amount of damages suffered by the defendant as the difference between the amount of alimony and other allowances plaintiff was decreed by the Illinois court as a result of her false and fraudulent representations and the amount she would have been allowed under the true facts. *Lampesis v. Comolli,* 101 N.H. 279, 284, 140 A.2d 561, 564-65 (1958). The recoupment of $6,125 was properly computed under that formula. W. Prosser, Law of Torts § 110, at 734 (4th ed. 1971). The defendant will thereby receive relief for that part of the plaintiff's judgment of $13,175 which resulted from plaintiff's fraud.

*Judgment on the verdicts.*

All concurred.